UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| STOLBERG, JAMES HAROLD, III ) <br> fnem HydroDynamic Fire Protection, LLC ) <br>   ) <br> Debtor/ Plaintiff ) <br> v. ) <br>   ) <br> RI/LLC-2 Acquisition Corp., ) <br> a Colorado corporation, and ) <br> CAB West, LLC, ) <br> a Delaware limited liability company ) <br>   ) <br> Defendants ) | Case No. 04-34091 EEB <br> Chapter 7 <br><br> Adv. Pro. No. _____ |

## COMPLAINT

Plaintiff and Debtor, James H. Stolberg, by and through his undersigned counsel, for his Complaint against Defendant RI/LLC-2 Acquisition Corp. and CAB West, LLC, states and alleges as follows:

## JURISDICTION AND VENUE

05-1726 EEB

1. This Court has jurisdiction over the subject matter of this Complaint pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. §§ 157(a) and (b)(1).

2. Plaintiff's prayer for relief concerns core proceedings pursuant to 28 U.S.C. §§ 157(b)(2)(A), (K) and (O).

3. Venue is proper in this district pursuant to 28 U.S.C. § 1409.

4. Defendant RI/LLC-2 Acquisition Corp. is a Colorado corporation which has its principal place of business in Fort Lauderdale, Florida (the "Dealer"). The Dealer conducts business under, among other trade names, John Elway AutoNation USA. During the time relevant to this Complaint, the Dealer had a sales office located at 3625 East Colfax Avenue in Denver, known as John Elway Ford Downtown.

5. Defendant CAB West, LLC, is a Delaware limited liability company which has its principal place of business in Dearborn, Michigan.

## GENERAL ALLEGATIONS

6. In 2001, the Debtor purchased a 2001 F-250 truck, which he used for his business installing fire protection systems, as well as, for personal use. The Debtor made monthly payments of $643.38 on the F-250.

7. In 2004, the Debtor knew he needed to file bankruptcy because he had signed personally on debts for his failed business HydroDynamic Fire Protection, LLC.

8. Aptitude tests administered by the City of Boulder have shown the Debtor to have the equivalent of a 4th grade education.

9. On October 23, 2004, the Debtor went to the Dealer to obtain a valuation for his 2001 F-250 truck which the Debtor intended to keep after he filed bankruptcy, notwithstanding its lien. His major assets were his truck and tools.

10. While at the Dealer that day, the Debtor inquired into a new F-350 truck. Dave Roehm, and Ron Owens salesmen for the Dealer, began helping the Debtor, eventually asking him questions while Mr. Roehm filled out a credit application on behalf of the Debtor. The Debtor told Mr. Roehm, that he intended to file bankruptcy. The Dealer pulled a credit report on the Debtor that the finance manager rated as a "C minus", typical of the clientele in that AutoNation location.

11. Mr. Roehm told the Debtor he could trade in his old truck and purchase a new F-350 truck for payments of $680 per month (about $36 more than his current payment) and a $2,000 cash down payment. Since the Debtor didn't have $2,000, the Dealer agreed to accept three separatechecks from him that day to be cashed over about a three week period. The down payment amount was derived from the amount the Debtor was going to spend on his old truck for repairs.

12. The Dealer asked the Debtor to sign their handwritten offer that stated:

**Will Buy and Drive today with $250 Down today; $650 on Thursday evening 28th Oct.; $1,100 paid on 11th November 2004.
72 payments @ 680's**

13. After the Debtor signed the Dealer's offer, Mr. Roehm said "let's do it." The Debtor was then introduced to the Dealer's finance manager, Jason Thomas. Mr. Thomas congratulated the Debtor on his purchase and then proceeded to sell him additional automotive services that raised the monthly payments to $771.83 ($128.45 more than his current payment).

14. Jason Thomas then prepared and asked the Debtor to sign numerous agreements and documents including a purchase agreement and two contracts specifically for the financing of the F-350. All the contracts were completely filled out and executed by both parties. No one at the Dealer told the Debtor that the sale was not final.

2

15. One of the financing contracts, *Colorado Simple Interest Vehicle Retail Installment Contract,* set forth all the pertinent financing costs such as an APR of 11.99%, and numerous terms such as the granting of a security interest in the F-350.

16. The other financing contract, *Credit Sale Contract, Security Agreement, Financing Statement and Disclosures,* also set forth various financing terms such as 72 payments of $771.83 due on the 7th of each month beginning December 7, 2004. This agreement also stated that the Dealer was crediting the Debtor with $1,101 for his trade-in. The Debtor's F-250 truck was worth about $25,000 and had a loan payoff of $13,899.

17. After the Debtor signed all the paperwork, the Dealer told him to transfer the items in his old F-250 truck to the new F-350 truck. There were many items since the Debtor had not planned on purchasing a new truck that day. Mr. Roehm helped the Debtor transfer the largest items such as a tool box and a crane, which scraped the paint off the bed of the F-350. No one at the Dealer told the Debtor that damaging the F-350 was a problem.

18. On October 23, 2004, the Debtor drove away in his new F-350 truck because the Dealer's desk manager believed the deal was final. The Debtor believed the deal was final.

19. On October 26, 2004, the Dealer cashed the Debtor's first down payment check.

20. Between October 23 and November 6, 2004 the Debtor engaged in his favorite activity and went on about five hunting trips in his new truck. During that same period, the Dealer called the Debtor's home several times for unknown reasons although the Dealer may have wanted the Debtor to return to the dealership. The Debtor never spoke to the Dealer.

21. On November 1, 2004 the Dealer entered the Debtor's old truck in inventory at a wholesale amount of $15,000 and paid off the $13,899 loan on the truck. On November 2, 2004 the Dealer cashed the Debtor's second down payment check of $650.

22. On November 4, 2004 the Debtor filed a bankruptcy petition commencing a case under Chapter 7.

23. On November 6, 2004, the Clerk of the Bankruptcy Court mailed to the Dealer the *Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors & Deadlines* ("**Notice**") detailing information about the Debtor's bankruptcy case. The Clerk's Office mailed the Notice to the Dealership at its address listed in Paragraph 6, above. The Notice contained the following information in prominent type: "**Creditors May Not Take Certain Actions**", which was followed with this:

> **The filing of the bankruptcy case automatically stays certain collection and other actions against the debtor and the debtor's property. If you attempt to collect a debt or take other actions in violation of the Bankruptcy Code, you may be penalized.**

3

24. Between November 4 and November 6, 2004 the Dealer called the Debtor's home six times because apparently the Dealer wanted the Debtor to return to the dealership. The Debtor never spoke to the Dealer.

25. Sometime between November 6 and 8, 2004, the Dealer contacted the Debtor's parents, who live in Massachusetts, about the F-350 causing them great concern that their son was in trouble. The Debtor's father was entering open heart surgery at the time. The Debtor's parents tried to contact the Debtor at least five times during these two days but were unable to reach him.

26. On November 15, 2004 the Dealer cashed the Debtor's third down payment check for $1,100.

27. Between November 15 and November 17, 2004 the Dealer called the Debtor's home phone six times but did not speak to him. The Dealer left at least one message that the Debtor should return to the dealership because the Dealer had a better deal for the Debtor that would reduce his monthly payments.

28. On November 19, 2004, Dave Kaplan, a repossession agent hired by the Dealer contacted the Debtor's employer. The Debtor's boss immediately contacted the Debtor, interrupting a meeting, and told him to call Mr. Kaplan. The Debtor immediately called Mr. Kaplan during the meeting. Through that conversation, Mr. Kaplan caused the Debtor to believe that Mr. Kaplan would immediately seize the F-350 unless the Debtor returned to the dealership that day.

29. The Debtor never spoke to the Dealer between October 23, 2004 and the evening of November 19, 2004.

30. The Debtor drove directly to the dealership after work on November 19, 2004. He was met by a salesman, Ron Owens, who told him how much better a lease would be for the Debtor. The Debtor had no interest in a lease.

31. Mr. Thomas then spoke to the Debtor and told him that the Dealer had not obtained financing on the F-350 and he would need to revise the sale as a lease. The Debtor told Mr. Thomas he did not want to lease the F-350. Mr. Thomas insisted. The Debtor asked for his F-250 truck back. Mr. Thomas refused.

32. Mr. Thomas presented the Debtor with a lease that had been drafted on November 17, 2004, two days before. The Debtor asked to take the lease to his attorney for review. Mr. Thomas refused.

33. The Debtor told Mr. Thomas that the Debtor had filed bankruptcy and his attorney had advised him that the Dealer wasn't supposed to be doing what they were doing.

34. Mr. Thomas told the Debtor he wasn't going to leave with the F-350 unless he signed the lease.

4

35. The Debtor noticed other employees standing around and acting as if they would enforce Mr. Thomas' threat.

36. The F-350 was filled with tools, some owned by the Debtor and some owned by his employer. The Debtor had no way to get home and no way to transport the tools without the F-350.

37. The Debtor signed the lease under duress and left with the F-350.

38. The lease terms stated a different value for the F-350, lowered the trade-in value of the F-250 and applied a portion of the Debtor's down payment toward the lease as of November 17, 2004. The lease also applied $600 of the Debtor's down payment (which included the equity on the F-250) to a mileage overage contract which the Debtor didn't want.

39. The Dealer also forced the Debtor to sign an odometer disclosure statement dated November 17, 2004 that set forth the mileage on the F-350 as 50 miles, when in fact the actual mileage was 2,062 miles on November 19, 2004, the date the disclosure was signed. The odometer disclosure would effectively charge all mileage on F-350 to the lease which had a penalty for mileage.

40. At all times between the date of purchase of the F-350 and the date the Debtor was forced to sign the lease, the Debtor was in perfect compliance with the terms of the October 23rd sales contract. No payments had become due.

41. The lease stated that CAB West, LLC was a "holder." Upon information and belief, the Dealer assigned its interest in the transaction with the Debtor to CAB West, LLC.

42. Just after the lease transaction, the Dealer contacted Mr. Stolberg and requested a pay stub. Mr. Stolberg, still upset from the Lease transaction, reluctantly complied because he feared another episode of the Dealer's harassment. But, in his anger, he blacked out his year-to-date earnings and faxed it to the Dealer. He also sent an e-mail to his attorney on November 22, 2004 complaining about the Dealer's actions and stating that the Lease transaction was consummated under duress because the Dealer threatened to keep the F-350.

43. On or about November 29, 2004 and without the Debtor's knowledge or permission, the Dealer contacted the Debtor's employer and requested a pay stub, apparently because the Dealer was unhappy with the Debtor's blacked-out version.

44. In January, 2005, the Debtor voluntarily turned the F-350 over to Stephen Peters, the bankruptcy trustee. This left the Debtor with no truck. The Debtor has been unable to obtain a truck because the bankruptcy left him with no money and no credit.

45. For the sole benefit of the estate, on January 11, 2005, the trustee commenced Adversary Proceeding 05-1019-EEB against the Defendants seeking to avoid the Dealer's unperfected lien and the postpetition lease.

46. The parties' settlement of the trustee's adversary action was approved by order of this Court dated July 15, 2005. The Debtor was not a party to and did not share in the settlement.

## FIRST CLAIM FOR RELIEF
## 11 U.S.C. § 362(h)

47. The Debtor incorporates each of the foregoing allegations as if set forth completely herein.

48. Each of the Dealer's telephone calls to the Debtor after November 4, 2004, the Dealer's telephone calls to his employer, the Dealer's telephone call to his parents constituted an act to recover a prepetition claim against the Debtor, an act to obtain possession of property of the estate or of property from the estate, and an act to exercise control over property of the estate.

49. The Dealer's attempt to repossess the F-350 truck and obtain title to it through Dave Kaplan constituted acts to recover a prepetition claim against the Debtor, an act to obtain possession of property of the estate or of property from the estate, and an act to exercise control over property of the estate.

50. The Dealer's postpetition recovery of title to the Vehicle from the Debtor constituted an act to recover a prepetition claim against the Debtor, an act to obtain possession of property of the estate or of property from the estate, and an act to exercise control over property of the estate.

51. The Dealer's refusal to allow the Debtor to leave the dealership with the F-350 constituted an act to recover a prepetition claim against the Debtor, an act to obtain possession of property of the estate or of property from the estate, and an act to exercise control over property of the estate.

52. The Dealer's postpetition execution of the lease with the Debtor constituted an act to recover a prepetition claim against the Debtor, an act to obtain possession of property of the estate or of property from the estate, and an act to exercise control over property of the estate.

53. The Dealer's collection of payments under the postpetition Lease constituted acts to recover a prepetition claim against the Debtor, acts to obtain possession of property of the estate or of property from the estate, and acts to exercise control over property of the estate.

54. Each of the above acts constituted a violation of the automatic stay imposed by 11 U.S.C. §362(a).

55. By reason of, among other things, the Debtor having advised the Dealer on October 23, 2004 of his impending bankruptcy, the Dealer's receipt of the November 7, 2004 Notice from the Bankruptcy Court, and the Debtor having advised the Dealer on November 19, 2004 of his bankruptcy filing, the Dealer knew of, or had knowledge sufficient to put it on notice of, the existence of the automatic stay and the conduct proscribed by the automatic stay.

56. The Dealer acted deliberately, knowingly and willfully in each of the acts set forth above.

57. The Debtor is an "individual" within the meaning of 11 U.S.C. §362(h).

58. The Debtor has been injured by the Dealership's violations of the automatic stay in an amount to be proven at trial, including but not limited to the amount of attorneys' fees and costs incurred by the Debtor.

WHEREFORE, The Debtor prays that the Court enter judgment in the Debtor's favor, and against the Dealer, in an amount equal to the Debtor's actual damages and attorney fees plus punitive damages, and for an award of the Debtor's taxable costs.

## SECOND CLAIM FOR RELIEF
## 11 U.S.C. § 362(h)

59. The Debtor incorporates each of the foregoing allegations as if set forth completely herein.

60. CAB West, LLC's recovery of title to the F-350 from the Debtor constituted an act to obtain possession of property of the estate or of property from the estate, and an act to exercise control over property of the estate.

61. CAB West, LLC's refusal to allow the Debtor to leave the dealership with the F-350 constituted an act to recover a prepetition claim against the Debtor, an act to obtain possession of property of the estate or of property from the estate, and an act to exercise control over property of the estate.

62. CAB West, LLC's postpetition execution of the lease with the Debtor constituted an act to obtain possession of property of the estate or of property from the estate, and an act to exercise control over property of the estate.

63. CAB West, LLC's collection of payments under the postpetition lease constituted acts to exercise control over property of the estate.

64. CAB West, LLC's postpetition acceptance of an assignment from the Dealer constituted an act to obtain possession of property of the estate or of property from the estate, and an act to exercise control over property of the estate.

65. Each of the above acts constituted a violation of the automatic stay imposed by 11 U.S.C. §362(a).

66. CAB West, LLC knew of, or had knowledge sufficient to put it on notice of, the existence of the automatic stay and the conduct proscribed by the automatic stay.

67. CAB West, LLC acted deliberately, knowingly and willfully in each of the acts set forth above.

68. The Debtor has been injured by CAB West, LLC's violations of the automatic stay in an amount to be proven at trial, including but not limited to the amount of attorney fees and costs incurred.

WHEREFORE, The Debtor prays that the Court enter judgment in Plaintiff's favor, and against CAB West, LLC in an amount equal to Plaintiff's actual damages, plus attorneys' fees plus punitive damages, if appropriate, and for an award of Plaintiff's taxable costs.

### THIRD CLAIM FOR RELIEF
### 11 U.S.C. § 105(a)

69. The Debtor incorporates each of the foregoing allegations as if set forth completely herein.

70. The Debtor is entitled to an award of damages under 11 U.S.C. §105(a) for the Defendant's wrongful acts.

WHEREFORE, Plaintiff prays that the Court enter judgment in the Debtor's favor, and against the Defendants for such relief as this Court deems appropriate.

### FOURTH CLAIM FOR RELIEF
### Declaratory Judgment

71. The Debtor incorporates each of the foregoing allegations as if set forth completely herein.

72. The Dealer and the Debtor entered into a contract on October 23, 2004 for the purchase and sale of an F-350 truck. The terms of sale are specific and complete, all the necessary contractual elements are met, and all documents were executed by both sides.

73. The Dealership's subsequent postpetition execution of the Lease with the Debtor constituted an act to recover a prepetition claim against the Debtor, an act to obtain possession of property of the estate or of property from the estate, and an act to exercise control over property of the estate.

74. Actions taken in violation of the automatic stay imposed by 11 U.S.C. §362(a) are void and of no force or effect.

75. A contract is voidable on grounds of duress if a party's manifestation of assent is induced by an improper threat that leaves no reasonable alternative.

76. The use of the F-250 truck, which was secured by dischargeable debt, as consideration for the postpetition lease of the F-350 violates 11 U.S.C. § 524(c) therefore, the lease is void and of no force or effect.

77. A postpetition transfer of property of the estate that is not authorized by the court is voidable.

WHEREFORE, Plaintiff requests that the Court enter judgment determining that:

a. The October 23, 2004 contract between the Dealer and the Debtor was a binding contract for the purchase and sale of the F-350 truck;

b. The Dealer's and/or CAB West, LLC's lease of the F-350 truck to the Debtor is void and of no effect;

c. For the Debtor's taxable costs; and,

d. For such other relief and further relief as may be appropriate.

Dated this 26th day of August, 2005.

by /s/ Charles Bradley Sutton
Charles Bradley Sutton, #29921
115 Iroquois Drive
Boulder, CO 80303
Ph.: (303) 494-0456
Fax: (303) 494-4012
E-mail: brad@gcal.org
ATTORNEY FOR DEBTOR/ PLAINTIFF

| B 104 (Rev. 2/92) | ADVERSARY PROCEEDING COVER SHEET (Instructions on Reverse) | | ADVERSARY PROCEEDING NUMBER (Court Use Only) |
|---|---|---|---|

**PLAINTIFFS**
James H. Stolberg

**DEFENDANTS**
RI/LLC-2 Acquisition Corp
CAB West, LLC

*[Stamp: 2005 AUG 26 P 3:16, BOLTON CLERK, DISTRICT OF COLORADO]*

**ATTORNEYS (Firm Name, Address, and Telephone No.)**
Charles Bradley Sutton
115 Iroquois Dr, Boulder, Co (303)494-0456

**ATTORNEYS (If Known)**

**PARTY (Check one box only)**  ☐ 1 U.S. PLAINTIFF   ☐ 2 U.S. DEFENDANT   ☒ 3 U.S. NOT A PARTY

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

11 USC 362(h)
11 USC 105(a)

*[Stamp:]*
☐ NOTICE TO LITIGANTS
☐ FEE DEFERRED (TRUSTEE)
☒ NO FEE REQUIRED (DEBTOR)
☐ NO COVER SHEET
☐ NO SUMMONS
☐ NO COMPLAINT

*[Stamp: 05-1726 EEB]*

**NATURE OF SUIT** (Check the one most appropriate box only.)

☒ 454 To Recover Money or Property
☐ 435 To Determine Validity, Priority, or Extent of a Lien or Other Interest in Property
☐ 458 To obtain approval for the sale of both the interest of the estate and of a co-owner in property
☐ 424 To object or to revoke a discharge 11 U.S.C. § 727

☐ 455 To revoke an order of confirmation of a Chap. 11, Chap. 12, or Chap. 13 Plan
☐ 426 To determine the dischargeability of a debt 11 U.S.C. § 523
☐ 434 To obtain an injunction or other equitable relief
☐ 457 To subordinate any allowed claim or interest except where such subordination is provided in a plan

☐ 456 To obtain a declaratory judgment relating to any of foregoing causes of action
☐ 459 To determine a claim or cause of action removed to a bankruptcy court
☒ 498 Other (specify) Violation of Stay

**ORIGIN OF PROCEEDINGS** (Check one box only.)
☒ 1 Original Proceeding
☐ 2 Removed Proceeding
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another Bankruptcy Court
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

**DEMAND** $ unknown

**OTHER RELIEF SOUGHT**  Attorney fees, cost, Punitive damages, declaratory judgment

☐ JURY DEMAND  Check only if demanded in complaint

**BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES**

NAME OF DEBTOR: Stolberg, James Harold
BANKRUPTCY CASE NO.: 04-34091 EEB
DISTRICT IN WHICH CASE IS PENDING: CO
DIVISIONAL OFFICE:
NAME OF JUDGE: Brown

**RELATED ADVERSARY PROCEEDING (IF ANY)**

| PLAINTIFF | DEFENDANT | | ADVERSARY PROCEEDING NO. |
|---|---|---|---|
| DISTRICT | DIVISIONAL OFFICE | NAME OF JUDGE | |

**FILING FEE** (Check one box only.)
☐ FEE ATTACHED   ☒ FEE NOT REQUIRED   ☐ FEE IS DEFERRED

DATE: Aug 26, 2005
PRINT NAME: Charles Bradley Sutton
SIGNATURE OF ATTORNEY (OR PLAINTIFF): *[signature]*